THE UNITED STATES, APPELLANTS, *v.* THE HEIRS OF GEORGE
  J. F. CLARKE, AND THE HEIRS OF GEORGE ATKINSON,
  APPELLEES.

A Florida land claim. A grant of fifteen thousand acres by the Spanish Governor of
  East Florida, in consideration of important services performed on behalf of the
  government of Spain, to George Atkinson, confirmed by the Supreme Court.

By the eighth article of the Florida Treaty, no grants of land made after the 24th of
  January, 1818, were valid; nor could a survey be valid on lands other than those
  authorized by the grant. Still the power to survey, in conformity to the concessions,
  existed up to the change of flags.

Spain had the power to make grants founded on any consideration, and subject to any
  restrictions within her dominions. If a grant was binding on that government, it is
  so on the United States, the successor of Spain. All the grants of land made by the
  lawful authorities of the King of Spain, before the 24th of January, 1818, were, by
  the treaty, ratified and confirmed to the owners of the lands.

Cited, Arredondo's Case, 6 Peters, 706; and Percheman's Case, 7 Peters, 51; Sibbald's
  Case, 10 Peters, 321.

The grant to Atkinson was for the land he mentioned in his petition, or for any other
  lands that were vacant. Three surveys were made of lands within the quantity
  granted, not at the place specially mentioned in the grant, but at other places. Held,
  that these surveys were valid, notwithstanding that they were made at different
  places.

APPEAL from the Superior Court of East Florida.

This was an appeal from the decree of the Superior Court of
East Florida, confirming the claims of the heirs of Clarke and
Atkinson to fifteen thousand acres of land, under the acts for the
adjustment of land-claims in Florida.

The claim was founded on a petition of George Atkinson, mer-
chant of Fernandina, dated October 8, 1816; and a decree of
Governor Coppinger thereon, dated October 20, 1816. The
petition states many services rendered to government, and
benefits conferred on the province; and prays that his excellency
would be pleased "to grant him, in property, fifteen thousand
acres of land in Cedar Swamp, and on the west of the lake
named Upper Little Lake."

The governor's decree states, that, in consideration of the merits
cited, he grants him, in property, the lands he solicits in the
petition; and that the surveyor-general will run them for him in

the places he mentions, or in others that are vacant, and of equal convenience to the party.

The originals of the petition and decree were not produced in evidence, neither are they to be found in the archives at St. Augustine. A certified copy, under the hand of Thomas de Aguilar, secretary of the government, (whose handwriting was proved,) stated to be faithfully drawn from the original in his office, was alone offered; and was objected to on the part of the appellants. The objection was overruled.

There were also produced four several plats and certificates of survey, made by George J. F. Clarke, surveyor-general, for George Atkinson.

1. Dated 20th January, 1818, for four thousand acres of land, northwardly of Dunn's creek, which runs from Dunn's lake to the river St. John's, and above the crossing place of said creek.

2. Dated 12th March, 1818, for three thousand acres of land, on the middle arm of Haw creek, which empties itself into Dunn's lake, toward the east.

3. Dated 21st March, 1818, for two thousand acres of land, in the place called Dupon's hammock, south-easterly of Bowlegs' prairie, and south-westwardly of Paynestown.

4. Dated 24th January, 1818, for six thousand acres, on Darcey's creek, and extending from the natural bridge of Santa Fe, on the road called Ray's trail.

The petition to the Court in this case, was filed on the 22d day of May, 1829, in the name of George J. F. Clarke, for himself; and the heirs and legal representatives of George Atkinson, deceased, and sets forth the grant; and that the claim of Atkinson had been filed before the land board of East Florida, who rejected the same, but did not report it forged or antedated; and that he had legal right, under the said George Atkinson, to acres, parcel of the said land.

On the 21st May, 1830, the district-attorney filed his answer, which, inter alia, states, that "the petitioner had not shown whether or not the said George Atkinson died intestate, or who are the legal heirs of the said George Atkinson, whether they are minors or otherwise, if any such there be; nor, indeed, has he expressly alleged that the said George Atkinson left any legal heirs or representatives, or that any such now exist; nor has he

shown any title in himself to the said tract of land, or any part thereof; nor has he stated or set forth in his petition any bargain, sale, deed, or deeds of conveyance from the said George Atkinson, in his lifetime, or from any of the said legal representatives of the said George Atkinson, since his death, to the said petitioner, to all or any part of the said lands, or in what right he claims, whether by gift, descent, devise, conveyance, or otherwise; and this respondent relies upon the aforesaid defects in the petition or bill of complaint, as matter of defence on the hearing of this cause."

Clarke having died, his heirs, on the 13th day of July, 1840, filed a petition to revive the suit, which was ordered accordingly on the 16th of July, 1840; and the cause came on to be heard on the 20th day of the same month. The counsel for the claimants then moved the Court that the cause might also proceed in the name of Philip R. Younge, and Mary Younge, his wife; Samuel Humphries, and Letitia Humphries, his wife; Jane Gains, widow of Dr. Joseph Gains; and Letitia Atkinson, heirs and legal representatives of George Atkinson; and, with the assent of the attorney of the United States, it was ordered accordingly.

No deed or conveyance, or evidence of any kind was offered, to show that either Clarke or his heirs had any interest whatever in the lands.

After hearing testimony, the Court made a decree in favour of the claimants, from which the present appeal is taken.

The case was argued by Mr. Legaré, the attorney-general, for the United States. For the United States, it was contended that the decree ought to be reve sed, on the following grounds:

1. That there is no evidence that Clarke, or his heirs, had any interest in the lands; and the petition, so far as regards them, ought to have been dismissed.

2. That the time limited by the acts of Congress, for the commencement of the proceedings in Court, having expired before the heirs of Atkinson were made parties; the Court had no jurisdiction as to the validity of the grant, so far as they were concerned.

3. That there was no sufficient evidence that the said alleged grant or concession was ever made by overnor Coppinger.

4. That Governor Coppinger had no authority to make such a grant.

5. That the description of the lands, in the said alleged grant, is too vague to be the foundation of a valid survey.

6. That there is no authority in the said alleged grant to survey four different tracts of land.

No counsel appeared for the appellees.

Mr. Justice CATRON delivered the opinion of the Court.

In 1816, George Atkinson set forth to the Governor of East Florida, various important services, through a series of years, performed in behalf of the government, and also many losses; in consideration of which, he solicited a grant in property of fifteen thousand acres of land, in Cedar swamp, and on the west of upper Little Lake.

The governor granted the lands in property; and added: "Consequently the surveyor-general will run them for him in the places he mentions; or in others that are vacant and of equal convenience to the party."

Two places were designated where the lands were to lie by the petition. They were surveyed on four places: the first survey for four thousand acres near Dunn's creek: the second for three thousand acres on Haw creek: the third for two thousand acres, in Dupon's hammock: and six thousand acres on Darcey's creek. One bears date the 20th of January, 1818; and the other three in March, of that year. None of them are on the lands solicited in the petition. The Court below affirmed the surveys; and if this Court concurs in the decree, the United States will be bound to issue patents for the four tracts. That the complainants are entitled to the lands in two surveys, at the places described in the petition, is not questioned; the difficulty is, could the interested party elect to abandon his first locations, and then multiply the tracts?

By the 8th article of the Florida treaty no grants made after the 24th of January, 1818, were valid; nor could a survey be valid on lands other than those authorized by the grant: still, the power to survey in conformity to the concession existed up to the change of flags.

That Spain had the power to make grants, founded on any

consideration, and subject to any restrictions within her discretion, is a settled question. If the act was binding on that government, so it is on this; as the successor of Spain. All the grants of lands, made by the lawful authorities of the King of Spain, before the 24th of January, 1818, were by the treaty ratified and confirmed to the owners of the lands. Such is the construction given to the eighth article by this Court in Arredondo's Case, 6 Peters, 706, and in Percheman's Case, 7 Peters, 51; that is, imperfect, titles were equally binding on this government after the cession, as they had been on the Spanish government before. The grant to Atkinson was for the lands he mentioned, or for any other lands that were vacant; and the surveyor-general was especially directed to lay them off in either way; the grant giving him an unrestricted discretion over the entire vacant lands of the province, to satisfy the highly meritorious claim of the petitioner : for however doubtful the merits of many claims may have been, as presented to us, of the justice of this there can be no question; it had in it peculiar equities, and therefore the party had conceded to him peculiar privileges in selecting the lands. The official, and well-defined duties of the surveyor-general, are set forth in Hanson's Case; and need not be repeated. He was acting for the government when making the survey, and bound to protect the public domain, within the restrictions imposed by the governor's decree; he did not exceed the decree by going to other places than those pointed out in the petition; and therefore did not exceed his authority, unless it was in making more surveys than two. This point was settled in Sibbald's Case, 10 Peters, 321. His was a mill grant for five miles square, on Trout creek; and in the event that situation would not permit the quantity of sixteen thousand acres, he asked, and had granted to him an equivalent of the deficiency, not at a particular place, but generally. In 1819, a tract of ten thousand acres was surveyed at Trout creek. In February, 1820, another of four thousand acres was surveyed thirty miles off at Turnbull's swamp—and the remaining two thousand acres at Bowleg's hammock, some thirty miles in a different direction. It was proved that no more than ten thousand acres could be had at Trout creek, because of interfering elder claims, and injury to third persons. The Court adjudged, in effect, that the equivalent referred to quantity rather than form

[The United States *v.* The Heirs of Clarke and Atkinson.]

of survey; and that the six thousand acres deficient, could be surveyed on any vacant lands in the province, and in several surveys; the only authority for doing so, was that an equivalent was decreed in case of deficiency. The two last surveys were confirmed, on the precise ground that, as to the equivalent, the party was not restricted to any particular spot, nor to any form or number of surveys; and therefore might elect any vacant lands, and at different places.

Sibbald's was a weaker case than the present; the words of the grant being less explicit: the principles presented being precisely the same in both, we cannot reverse the decree below, without overruling the former decision—to which the Court below was bound to conform. We therefore order the decree to be affirmed.